UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN HENRY HAIRSTON,

    Defendant.

_____/

Case No. 24-cr-20582

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 19)**

Before the Court is Defendant John Henry Hairston's motion to suppress (Dkt. 19). For the reasons set forth below, the Court denies the motion.[1]

### I. BACKGROUND

Hairston is charged with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Indictment (Dkt. 12). At issue in this motion is whether there was a sufficient "nexus" alleged in the September 23, 2024 warrant issued by a magistrate judge to search the residence on the 2800 block of Glasgow Street in Southfield, Michigan for, among other things, (i) illegal controlled substances; (ii) paraphernalia for packaging, processing, weighing, and distributing controlled substances; (iii) personal books and papers relating to the distribution of controlled substances; and (iv) firearms. See Olsen Aff. at PageID.102–103 (Dkt. 19).

---

[1] In addition to the motion to suppress, the briefing includes the Government's response (Dkt. 20) and Hairston's reply (Dkt. 22). The Court held a hearing on the motion on June 11, 2025. See 6/11/25 Minute Entry.

ATF Special Agent Randall Olsen provided the affidavit to secure the warrant. Id. at PageID.74. According to the affidavit, ATF was investigating Hairston for drug trafficking, and it conducted three controlled buys of cocaine base with Hairston over August and September of 2024. Id. at PageID.78–79.

During the course of its investigation, ATF identified two properties associated with Hairston, a property on Lindsay Street in Detroit, Michigan and a property on Glasgow Street in Southfield, Michigan. Id. at PageID.75–76. The affidavit alleges that Hairston used the property on Lindsay Street as a "stash" house while Hairston lived at the property on Glasgow Street. Id. at PageID.84, 86. Law enforcement identified the Glasgow Street residence through a law enforcement database query. Id. at PageID.85.

The first controlled buy took place in August 2024. Id. at PageID.79. An undercover agent contacted Hairston to arrange the purchase of crack cocaine and Hairston directed the undercover agent to meet him at a location in Detroit. Id. Law enforcement observed Hairston departing the residence on Lindsay Street in a vehicle (Vehicle 1) and arriving at the agreed upon location ten minutes later, where the transaction took place. Id. at PageID.79, 80.

During the second transaction, also in August 2024, an undercover agent called Hairston to arrange a crack cocaine purchase. Id. at PageID.80. Agents again observed Hairston leave the residence on Lindsay Street in Vehicle 1, stop shortly at another residence, and proceed to the transaction location. Id. at PageID.80–81. After the transaction, Hairston returned to the Lindsay Street residence. Id. at PageID.82.

The third transaction took place in September 2024. Id. at PageID.82. During this transaction, law enforcement observed Hairston depart the Glasgow Street residence, drive in

another vehicle (Vehicle 2) directly to the Lindsay Street residence, and then drive directly to the meeting location to complete the transaction.  Id. at PageID.82–83.

Law enforcement surveilled the Glasgow Street residence four times during August and September of 2024.  Id. at PageID.85–86.  Each time, law enforcement observed at least one and sometimes both of the two vehicles that Hairston drove to the controlled buys at Glasgow Street.  Id.  One of the times, law enforcement observed Hairston leave the residence on Glasgow Street and enter one of the vehicles.  Id.

After the second transaction, law enforcement obtained a Pen Register Trap and Trace warrant for Hairston's phone.  Id. at PageID.83.  Location data from this search warrant showed that Hairston's phone was at the Glasgow Street residence twenty-seven times during August 11, 2024 to September 11, 2024 between the timeframe of 2:00 a.m. and 6:00 a.m.  Id. at PageID.86.

Special Agent Olsen applied for and was granted a warrant to search both the Lindsay and Glasgow Street residences, Vehicles 1 and 2, and Hairston's cell phone.  Id. at PageID.78.  In his supporting affidavit related to the probable cause to search the Glasgow Street residence, Special Agent Olsen cited his "training and experience" [] as well as the experience of "other agents involved in narcotics trafficking investigations" that "individuals who are involved in drug trafficking often keep evidence of their participation in such a drug trafficking scheme at their personal residence."  Id. at PageID.86.

Pursuant to the warrant, agents searched both the Lindsay and Glasgow Street properties on September 24, 2024.  Resp. at PageID.112.  At the Glasgow Street property, agents found a loaded Taurus G3C pistol with eight rounds of ammunition in the kitchen, a bag containing seven rounds of Hornady 9mm ammunition in a dresser drawer next to a bank card with the name "John H Hairston," male clothing, and a utility bill in Hairston's name.  Id.  Hairston was asleep at

Glasgow Street residence when agents executed the warrant. Id. Hairston was indicted by a federal grand jury for one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) on October 15, 2024. Indictment (Dkt. 12).

## II. ANALYSIS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched . . . ." U.S. Const. amend. IV. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Christian, 925 F.3d 305, 311 (6th Cir. 2019) (punctuation modified). When presented with an application for a search warrant supported by an affidavit, a judicial officer must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983)).

**A. Nexus Between the Glasgow Street Residence and Suspected Criminal Activity**

To justify a search of a residence, a search warrant must allege a sufficient "nexus between the place to be searched and the evidence to be sought." United States v. Carpenter, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). To satisfy the nexus requirement, there must be a "fair probability" that the location to be searched will contain evidence of the illegal activity. Id. (punctuation modified). "[W]hether an affidavit establishes a proper nexus is a fact-intensive question resolved by examining the totality of the circumstances presented." United States v. Brown, 828 F.3d 375, 382 (6th Cir. 2016) (punctuation modified).

When there is no evidence of drug dealing out of the dealer's home, the United States Court of Appeals for the Sixth Circuit has found a sufficient nexus to establish probable cause to search

4

a drug dealer's home when the drug dealing amounts to "continual and ongoing operations." United States v. Sheckles, 996 F.3d 330, 342 (6th Cir. 2021). This is based on the theory that if a drug dealer's activity is regular and ongoing, it is more likely that his home will also have evidence of drug dealing. United States v. Simmons, 129 F.4th 382, 387 (6th Cir. 2025) (punctuation modified). No single fact predominates in the inquiry of whether operations are "continual and ongoing," but the supporting evidence must detail "recent, reliable evidence of drug activity." United States v. McCoy, 905 F.3d 409, 417–418 (6th Cir. 2018). Indicators of recent, reliable drug activity include: (i) quantity of drugs, (ii) repeated nature of the transactions, (iii) defendant's past record of drug dealing, (iv) independent surveillance (if law enforcement receives a tip about drug dealing from an informant), (v) work with an independent drug-trafficking operation, or (vi) witnesses accounts corroborated by an affiant's experience and training. Simmons, 129 F.4th at 387 (punctuation modified).

There is no evidence of drug dealing out of the Glasgow Street residence, so the Government relies on the "continual and ongoing" operations theory to establish the nexus to search the residence. Resp. at PageID.117. This requires the Court to examine whether the affidavit established "recent, reliable evidence of drug activity" by Hairston. Simmons, 129 F.4th at 387.

The Government argues that the affidavit demonstrates Hairston was engaged in "continual and ongoing drug dealing" because he participated in three controlled buys in the two months prior to the execution of the search warrant. Resp. at PageID.117–118. The Government points three additional pieces of evidence to establish Hairston's "continual and ongoing" operations: (i) Hairston's two felony drug convictions, from 2011 and 2013; (ii) Special Agent Olsen's experience that drug dealers keep evidence of their dealing in their home; and (iii) the fact that

5

before the third controlled buy, Hairston was seen leaving the Glasgow Street residence, stopping quickly at the Lindsay Street residence, before driving to the transaction. Id. at PageID.118–119.

Hairston argues that he was not engaged in "continual and ongoing" drug dealing because the affidavit only "describes three drug purchases between August and September of 2024." Reply Br. at PageID.131. Hairston alleges that there is insufficient evidence to connect his drug dealing to Glasgow Street because law enforcement did not see him at the Glasgow Street residence "with a key, with suspicious packages or wads of money" that would be consistent with drug trafficking activity. Reply Br. at PageID.129.

The Court finds that the determination of "continual and ongoing" drug dealing a close call in this case. Caselaw "leaves unclear the amount of drug activity required to invoke this nexus principle." United States v. Reed, 993 F.3d 441, 451 (6th Cir. 2021).

The Government alleges three controlled buys for crack cocaine that occurred in the month and a half before the warrant is executed on the house. Resp. at PageID.118. But the Government does not allege anything about the amount of drugs sold—only that each transaction involved "one knotted bag." Olsen Aff. at PageID.80, 82, 83. Caselaw finding that the quantity of drugs establishes "continual and ongoing" operations often lists quantities of the drugs sold. See e.g., United States v. Gunter, 551 F.3d 472, 481 (6th Cir. 2009) (finding that the search warrant established a sufficient nexus to search a drug dealer's residence when it contained evidence of repeated purchases of cocaine in the one-to-four-kilogram range).

In terms of the number of transactions, case law finding sufficient nexus to search a residence with a low number of transactions also contains additional evidence connecting the residence to the drug dealing. United States v. Sanders, 106 F.4th 455, 463 (6th Cir. 2024) (en banc) (finding the two controlled buys sufficient to search a residence when the dealer is present

6

at the residence before the transaction and drives <u>directly</u> to the residence after the transaction is complete); Cf. <u>McCoy</u>, 905 F.3d at 418 n.5 (finding that evidence of a single instance of drug possession or distribution typically will not suffice to establish that a drug dealer is engaging in "continual and ongoing" operations).

The affidavit contains minimal facts connecting the residence to the three transactions. The Government alleges that before the third transaction, Hairston left the Glasgow residence, proceeded to the stash house, and then conducted the transaction. Olsen Aff. at PageID.82. But the affidavit provides no information about where Hairston went after the transaction was completed.

The other evidence in the affidavit does not convincingly tip the scale into "continual and ongoing" operations territory. Hairston's felony drug convictions are not recent—from twelve and fourteen years ago, and Special Agent Olsen's experience that drug dealers keep evidence of drug dealing in their residences, alone, is insufficient to establish the necessary nexus. The evidence that Hairston left the Glasgow Street residence before transaction three could have been sufficient to tip the scale, but the affidavit provides no information about where Hairston went <u>after</u> the transaction, which was a decisive fact in the <u>Simmons</u> case. 129 F.4th at 388.

Like the <u>Reed</u> court, this Court will pass on the "thornier" question of whether probable cause was established. <u>Reed</u>, 993 F.3d at 449–450. However, the Government is on more solid ground in arguing the good-faith exception, discussed immediately below.

B. **The Good-Faith Exception**

The seminal good-faith decision is <u>United States v. Leon</u>, 468 U.S. 897, 923 (1984). "Under <u>Leon</u>, the exclusionary rule does not bar from admission evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." <u>Christian</u>, 925

7

F.3d at 312 (punctuation modified).  However, the good-faith exception is not applicable "when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. White, 874 F.3d 490, 496 (6th Cir. 2017) (punctuation modified).  "An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a bare bones affidavit." Id. (punctuation modified).  Importantly, the "bare bones" label is "reserve[d] . . . for an affidavit that merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." United States v. Gilbert, 952 F.3d 759, 763 (6th Cir. 2020) (punctuation modified).

Hairston argues that the good-faith exception does not apply here because the affidavit is bare bones and did not offer "minimally sufficient evidence of a nexus" upon which officers could rely.  Mot. at PageID.70.  Hairston does not cite caselaw with similar facts in support of this proposition.  In his supplemental brief, Hairston acknowledges that the Sixth Circuit has upheld searches under the Leon good-faith exception even where it found an insufficient nexus between the defendant's residence and suspected criminal activity.  See Reply Br. at PageID.133.  But Hairston argues that the facts in his case differ from the facts of United States v. Neal, 106 F.4th 568 (6th Cir. 2024), upon which the Government relies.

The Court disagrees with Hairston.  The affidavit includes allegations that clear the barebones hurdle: (i) law enforcement conducted three recent controlled buys with Hairston, Olsen Aff. at PageID.80, 82–83; (ii) Hairston had two previous felony drug convictions, id. at PageID.76; (iii) law enforcement surveilled the Glasgow house four times and saw vehicles that Hairston used during the controlled buys present each time, id. at PageID.85–86; (iv) location data from Hairston's cell phone placed him at the Glasgow house twenty-seven days in a one-month period

8

between 2:00 a.m. and 6:00 a.m., id. at PageID.86; (v) before the third transaction, law enforcement saw Hairston leave Glasgow Street residence, proceed to the stash house, and then proceed to the transaction, id. at PageID.82; and (vi) Special Agent Olsen stated that in his experience, drug dealers keep evidence of drug trafficking at their residence.  Id. at PageID.86–87.

Such allegations are beyond "suspicions . . . , without . . . [a] basis of knowledge," and their inclusion in the affidavit precludes it from being characterized as "bare bones."  Gilbert, 952 F.3d at 763.  The search is saved by the good-faith exception to the exclusionary rule, even if the affidavit lacked probable cause.

### III. CONCLUSION

For the reasons stated above, the Court denies Hairston's motion to suppress (Dkt. 19).

**SO ORDERED.**

Dated: July 10, 2025  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2025.

s/Joseph Heacox  
JOSEPH HEACOX  
Case Manager

9